**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| KIESHA LEWIS,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF MARYLAND,<br>MARYLAND DEPARTMENT OF TRANSPORTATION,<br>MARYLAND TRANSIT ADMINISTRATION,<br>MARYLAND TRANSPORTATION AUTHORITY and<br>STATE HIGHWAY ADMINISTRATION,<br><br>Defendants. | Civil Action No. 26-0248-TDC |

**MEMORANDUM OPINION**

Plaintiff Kiesha Lewis has filed this civil action against Defendants the State of Maryland, the Maryland Department of Transportation ("MDOT"), the Maryland Transit Administration ("MTA"), the Maryland Transportation Authority ("MDTA"), and the Maryland State Highway Administration ("SHA"). She alleges claims of race and sex discrimination, as well as a claim of retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17, and the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't §§ 20–601 to 20–611 (LexisNexis 2021). She also asserts claims of disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111–12117, and the MFEPA. Defendants have filed a Motion to Dismiss, or in the Alternative, for Summary Judgment, which is fully briefed. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

Plaintiff Kiesha Lewis is an African American woman who has worked in "administrative operations, procurement support, program coordination, and contract oversight" for over 12 years. Am. Compl. ¶ 9, ECF No. 11. Lewis also has a "documented" disability. *Id.* ¶ 32.

Lewis's employment history includes positions as a Frontline Manager for the Internal Revenue Service; a Management Analyst for the Administrative Office of the United States Courts; a Project Manager for Premier Management, a private company; a Program Analyst for the United States Census Bureau; and an Information Technology ("IT") Specialist for the National Science Foundation. She holds two master's degrees, a Master of Business Administration and a Master of Science in IT Systems, as well as multiple upper-level certifications.

### I. Job Applications

Between May 2025 and July 2025, Lewis applied for and was denied at least five procurement or administrative positions with various Maryland state agencies, including Defendants MDOT, MTA, MDTA, and SHA. Lewis alleges that these failures to hire her were the result of discrimination based on race, sex, and disability.

First, Lewis applied for a Procurement Officer III position with MDOT. On June 5, 2025, she received an email from a hiring officer at MDOT informing her that MDOT was "unable to approve her application" due to "insufficient experience." Joint Record ("J.R.") 13, ECF No. 16-1; *see* Am. Compl. ¶ 13(a).

Subsequently, Lewis applied for and was rejected from four other positions at the same or similar state agencies. She applied for a Procurement Officer II position at the MTA but was notified on June 16, 2025 that she had been deemed "not qualified." Am. Compl. ¶ 13. Lewis

also applied for a Procurement Officer position with the SHA and asserts that she was eventually rejected from the position as "not qualified." *Id.*

Lewis applied for a position as a Management Support Associate at MDTA but was informed by email on June 30, 2025 that she did not meet the minimum qualifications for the position due to her "Insufficient Selective Qualifications Experience." 6/30/2025 9:10 a.m. Email at 1, Compl. Ex. B, ECF No. 2; *see* J.R. 2. That same day, her application for an Office Manager position with the SHA was rejected for the same reason.

## II. Alleged Retaliation

Following this series of unsuccessful applications, Lewis became suspicious that she was being subjected to discrimination. On June 30, 2025, Lewis responded to the email notifying her that she was deemed insufficiently qualified for the Office Manager position at the SHA by asking for clarification on the decision and guidance on how to challenge the determination. Later that day, Lewis responded again in the same email chain and stated that she had "contacted the Governor's Office" and "would like to contact senior management" within the SHA. 6/30/2025 12:19 p.m. Email at 1, Compl. Ex. B, ECF No. 2.

On July 11, 2025, Lewis filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") in which she alleged race and sex discrimination in the decisions to deny her the positions to which she had applied. She stated in her charge of discrimination ("the EEOC charge") that she had received numerous rejection emails informing her that she did not meet the "minimum or selective criteria" for the positions to which she had applied, that those determinations were "factually inaccurate" in light of her extensive experience, and that they were "potentially discriminatory in nature" in that they suggested "a systemic bias that disproportionately excludes Black women and other historically marginalized professionals

from advancing through the state's hiring pipeline." J.R. 1. On August 19, 2025, the EEOC issued a Determination and Notice of Rights informing Lewis that the investigation into her EEOC charge had ended and notifying her of her right to file a private civil action in court.

In addition to her EEOC charge, Lewis also "rais[ed] concerns with state officials regarding discriminatory hiring practices." Am. Compl. ¶ 18. On July 13, 2025, she sent a written complaint by email to MDOT at mdotfairpractices@mdot.maryland.gov in which she alleged discrimination based on race, sex, and disability. Her complaint was reviewed by the MDOT Director of Fair Practices, who requested clarification from Lewis on the basis of the disability discrimination claim. Lewis responded by stating that she had disclosed on her various applications that she had a "documented disability" and claimed that she may have been subjected to disparate treatment in the hiring process because of this disclosure. 7/25/2025 Email at 1, Opp'n Ex. 1, ECF No. 14.

Lewis asserts that following these complaints, Defendants retaliated against her by "alter[ing] her eligibility determinations and continu[ing] to deny her fair consideration." Am. Compl. ¶ 19. On July 18, 2025, Lewis received an email notifying her that she had not been selected for a Procurement Officer II position at the MTA for which she had previously applied. The email stated that she did not meet the minimum qualifications for the position because she had insufficient experience. 7/18/25 Email at 1, Compl. Ex. B, ECF No. 2.

During this time frame, Lewis applied for a "materially similar" Procurement Officer II position with the MDTA. *Id.* ¶ 14. As part of an initial screen, her application received a training and experience rating of "best qualified," which was communicated to Lewis in a September 17, 2025 email. 9/17/2025 Email at 1, Compl. Ex. C, ECF No. 2. Then, on October 24, 2025, Lewis received an email from an MTA Talent Acquisition Manager informing her that an error had been made in the initial screening process for her application for an MTA Procurement Officer II

position, presumably the one from which she was rejected on July 18, 2025. 10/24/2025 Email at 1, Compl. Ex. D, ECF No. 2. The email stated that after Lewis had raised a concern about the determination, MTA conducted a secondary review and determined that Lewis did, in fact, meet the minimum qualifications for the position and that the initial determination of "unqualified," presumably the same one originally communicated to Lewis in the July 18, 2025 email, had been reversed. *Id.* The Amended Complaint and attachments provide no further information about these two job applications.

### III. Procedural History

On October 31, 2025, Lewis filed the original Complaint in this case in the Circuit Court for Prince George's County, Maryland. After Defendants removed the case to this Court, Lewis filed the presently operative Amended Complaint in which she alleges the following claims in the following numbered counts: (1) race discrimination, in violation of Title VII and the MFEPA; (2) sex discrimination, in violation of Title VII and the MFEPA; (3) disability discrimination, in violation of the ADA and the MFEPA; and (4) retaliation, in violation of Title VII, the ADA, and the MFEPA.

## DISCUSSION

In their Motion to Dismiss, or in the Alternative, for Summary Judgment, Defendants argue that the claims should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or summary judgment should be granted pursuant to Rule 56, because: (1) the Court lacks subject matter jurisdiction over the MFEPA claims because Lewis did not comply with a precondition for filing; (2) the ADA claims are barred by state sovereign immunity; (3) Lewis failed to exhaust administrative remedies relating to the ADA claims; and (4) Lewis failed to allege sufficient facts to support a plausible claim for relief on any of her claims.

## I. Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Ed. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys.*, LLC, 959 F.3d 605, 618 (4th Cir. 2020).

Typically, when deciding a motion to dismiss under Rule 12(b)(6), a court considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Based on this rule, the Court will consider the exhibits attached to Lewis's original Complaint. Courts are also permitted to consider a document attached to a motion to dismiss "when the document is 'integral to and explicitly relied on in the complaint,' and when 'the plaintiffs do not challenge the document's authenticity.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–7 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). Here, in the Joint Record, Defendants have submitted Lewis's original EEOC charge and the documents she attached to it, which include emails notifying her that she was not selected for the positions to which she applied, and Lewis has submitted email records reflecting her internal complaint to the MDOT Office of Fair

Practices. In the Amended Complaint, Lewis references her filing of an EEOC charge and her discrimination complaint to state officials, and, in fact, Lewis explicitly relies on these complaints as the basis for her retaliation claims, so they are integral to the complaint. *See Wooten v. Univ. of Md., Baltimore*, 733 F. Supp. 3d 402, 417–18 (D. Md. 2024) (finding that an administrative charge of discrimination attached to the defendant's motion was integral to the complaint). Further, where Lewis referenced the notices of non-selection in the Amended Complaint, the emails in the Joint Record that constitute those notices are also integral to the complaint. Where Lewis has not challenged the authenticity of any of the submitted records, the Court will thus consider these documents in resolving the Motion to Dismiss.

As for whether the Court may construe the Motion as a Motion for Summary Judgment, before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Lewis, in her memorandum in opposition to the Motion, has included a Rule 56(d) declaration in which she

stated that key evidence needed to oppose a summary judgment motion remains in Defendants' exclusive possession. Because Lewis has provided a sufficient basis to conclude that discovery is necessary before summary judgment could be fairly considered, the Court will not construe the Motion as a Motion for Summary Judgment and will construe it only as a Motion to Dismiss. *See McCray v. Md. Dep't of Transp., Md. Transit Admin.*, 741 F.3d 480, 484 (4th Cir. 2014) (declining to consider summary judgment without first granting discovery where "the main issue is one of motive and where most of the key evidence lies in the control of the moving party").

## II. ADA Claims

In Count 3, Lewis alleges claims of disability discrimination under the ADA and the MFEPA. Specifically, she asserts that she "has a disability or was regarded as disabled, which was reflected in each of her job applications," and that "Defendants took adverse actions because of [her] disability." Am. Compl. ¶¶ 32–33.

### A. Sovereign Immunity

At the outset, Defendants argue that the Court must dismiss Lewis's ADA claims because they are barred by state sovereign immunity. In *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), the United States Supreme Court held that Congress, in enacting the ADA, did not validly abrogate the States' immunity under the Eleventh Amendment to the United States Constitution from suits for disability discrimination under Title I of the ADA because it had not demonstrated "a pattern of unconstitutional discrimination by the States" that would warrant abrogation pursuant to Congress's authority under the Fourteenth Amendment. *Id.* at 365, 372–74. Based on the same reasoning, multiple United States Courts of Appeals have found that Congress did not validly abrogate Eleventh Amendment immunity with respect to claims for retaliation under Title V of the ADA for asserting a violation of Title I. *See Yerdon v.*

*Poitras*, 120 F.4th 1150, 1154–55 (2d Cir. 2024); *Stanley v. W. Mich. Univ.*, 105 F.4th 856, 864–66 (6th Cir. 2024); *Block v. Tex. Bd. of Law Exam'rs*, 952 F.3d 613, 619 (5th Cir. 2020); *Demshki v. Monteith*, 255 F.3d 986, 988–89 (9th Cir. 2001).

Lewis correctly asserts that, by removing this case from state court to this Court, Defendants have waived their Eleventh Amendment immunity, but Defendants still retain any state sovereign immunity they would have had in state court. *Biggs v. N.C. Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (holding that "a state's removal of a suit to federal court waives sovereign immunity only if the state has consented to suit in its own courts"); *Stewart v. North Carolina*, 393 F.3d 484, 490 (4th Cir. 2005). The relevant question is therefore whether Maryland has consented to suit under the ADA or otherwise waived its sovereign immunity in its own courts through "a clear statement" of waiver. *See Passaro v. Virginia*, 935 F.3d 243, 247–48 (4th Cir. 2019) (assessing whether Virginia had waived its sovereign immunity from claims under Title I of the ADA). The Supreme Court of Maryland has held that the Maryland Tort Claims Act, the most likely potential source of waiver, did not waive sovereign immunity from suit for "federal statutory claims." *Williams v. Morgan State Univ.*, 300 A.3d 54, 59–60 (Md. 2023). Lewis has identified no other potential source of waiver. Therefore, even though Defendants waived Eleventh Amendment immunity by removing the case to federal court, where there has been no "clear statement" of a waiver of state sovereign immunity as to the relevant ADA claims, the Motion will be granted as to the ADA claims. *Passaro*, 935 F.3d at 248; *Williams*, 300 A.3d at 59–60; *Bozarth v. Md. State Dep't of Educ.*, No. 19-3615-DLB, 2021 WL 1225448, at *11 (D. Md. Mar. 31, 2021) (dismissing an ADA disability discrimination claim because Maryland has not waived state sovereign immunity in relation to such a claim).

**B. Exhaustion of Administrative Remedies**

Defendants also assert that the Court should dismiss Lewis's ADA disability discrimination claim for lack of subject matter jurisdiction because Lewis failed to exhaust administrative remedies. Such a failure is not an issue of subject matter jurisdiction but is instead an affirmative defense. *See Fort Bend Cnty. v. Davis*, 587 U.S. 541, 551 (2019) (holding that the Title VII requirement to file an EEOC charge is a "mandatory" claim processing rule but "not a jurisdictional prescription delineating the adjudicatory authority of courts"); *Bush v. Frederick Cnty. Pub. Schs.*, No. 23-1127, 2024 WL 639255, at *2 (4th Cir. Feb. 15, 2024) (stating that a defendant must assert a failure to comply with EEOC filing requirements as an affirmative defense). This claim is therefore properly construed as seeking dismissal for failure to state a claim under Rule 12(b)(6).

In general, a Rule 12(b)(6) motion tests only the sufficiency of the complaint such that consideration of an affirmative defense is premature. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, courts may consider affirmative defenses like a failure to exhaust administrative requirements in relation to a Rule 12(b)(6) motion when "all facts necessary to the affirmative defense clearly appear on the face of the complaint," and "the plaintiff's potential response to the affirmative defense was foreclosed by the allegations in the complaint." *L.N.P. v. Kijakazi*, 64 F.4th 577, 586 (4th Cir. 2023) (quoting *Goodman*, 494 F.3d at 464, 466). In the context of employment discrimination claims, courts have considered a claim that the plaintiff failed to exhaust administrative remedies on a Rule 12(b)(6) motion. *See Hoffman v. Inova Health Care Servs.*, 169 F.4th 207 (4th Cir. 2026) (considering the contents of an EEOC charge and dismissing discrimination claims under Rule 12(b)(6) based on the failure to exhaust administrative remedies); *Wooten*, 733 F. Supp. 3d at 423–26 (considering the contents of an

administrative charge of discrimination and dismissing retaliation claims under Rule 12(b)(6) that were not properly alleged in the charge).

Congress modeled the ADA on Title VII and incorporated its enforcement remedies and procedures into the ADA. 42 U.S.C. § 12117(a); *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593 (4th Cir. 2012). Before filing a federal lawsuit under Title VII or the ADA, a plaintiff must first exhaust administrative remedies by filing and pursuing a charge with the EEOC. *See* 42 U.S.C. §§ 2000e-5(b), (f), 12117(a); *Sydnor*, 681 F.3d at 593. The "EEOC charge defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). Thus, the "allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996)). Accordingly, a plaintiff's claim "generally will be barred if his charge alleges discrimination on one basis—such as race—and he introduces another basis in formal litigation—such as sex." *Id.* In *Bryant*, the United States Court of Appeals for the Fourth Circuit found that a plaintiff did not satisfy the administrative exhaustion requirement in relation to his claims of color and sex discrimination where his EEOC charge did not reference those forms of discrimination and instead alleged only race discrimination. *Bryant*, 288 F.3d at 132–33.

Here, Defendants assert that Lewis did not properly exhaust administrative remedies because, although it is undisputed that Lewis filed an EEOC charge, she did not allege disability discrimination in that charge and instead alleged only race and sex discrimination. Where Lewis does not contest that her EEOC claim fails to reference disability discrimination, and the facts necessary to determine that she failed to do so are apparent from the complaint and the EEOC charge integral to it, the Court finds that the ADA disability discrimination claim is subject to

dismissal. *See id.*; *Chacko*, 429 F.3d at 509. Lewis argues that the failure to allege disability discrimination in the EEOC charge should be overlooked because EEOC charges must be construed liberally and, between her EEOC charge and her internal complaint to the MDOT Office of Fair Practices, she satisfied the purposes of administrative exhaustion by putting Defendants on notice to investigate and potentially resolve the dispute. Although the scope of an EEOC charge does not "strictly limit" a plaintiff's subsequent suit, the claims asserted in a federal lawsuit must be "reasonably related" to and "expected to follow from a reasonable administrative investigation" into the claims in the EEOC. *Sydnor*, 681 F.3d at 594 (citation omitted). As the Fourth Circuit recognized in *Bryant*, an administrative investigation of one type of discrimination "could not reasonably be expected to occur" when the plaintiff's charge alleged an entirely different type of discrimination. *Bryant*, 288 F.3d at 133. While Lewis may have mentioned disability discrimination in her internal complaint to the MDOT, such a complaint does not substitute for administrative exhaustion. *See Sydnor*, 681 F.3d at 593 (stating that the goal of administrative reporting is to put not only the employer, but also the administrative agency, on notice so that they can investigate and potentially resolve the claim without litigation). The ADA disability discrimination claim will therefore also be dismissed based on the failure to exhaust administrative remedies.

## III. Discrimination

In Counts 1 and 2, Lewis alleges claims of race and sex discrimination under Title VII and the MFEPA arising from the failure to hire her for the various positions at state agencies for which she applied. In Count 3, Lewis alleges disability discrimination under the ADA and the MFEPA based on the same incidents. Defendants seek dismissal of these counts on the grounds that Lewis

has not alleged sufficient facts to support a reasonable inference that Defendants actions were motivated by race, sex, or disability discrimination.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire ... or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To state a Title VII discrimination claim, a plaintiff may demonstrate through direct or circumstantial evidence that race or sex "motivated the employer's adverse employment decision." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc). Alternatively, a plaintiff may proceed through the approach adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), "under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Hill*, 354 F.3d at 285. On a motion to dismiss, a plaintiff need not necessarily establish a *prima facie* case of discrimination, but "the complaint's factual allegations must allow a 'court to draw the reasonable inference that the defendant is liable'" for discrimination. *McCleary-Evans v. Md. Dep't of Transp., State Hwy. Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

To allege a *prima facie* case of Title VII discrimination based on a failure to hire, a complaint must include facts showing that the plaintiff: (1) is a member of a protected class; (2) applied for the position in question; (3) was qualified for the position; and (4) was rejected for the position "under circumstances giving rise to an inference of unlawful discrimination." *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998). As to the fourth prong, the fact that the position at issue was filled by an individual from outside the protected class, without plausible allegations

that the plaintiff was more qualified or better suited for the position, is not alone sufficient to support an inference of discrimination. *McCleary-Evans*, 780 F.3d at 586, 588.

Title I of the ADA, which addresses employment discrimination against persons with disabilities, provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The statute defines a "qualified individual" as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The term "essential functions" refers to the "fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n). As under Title VII, a plaintiff can proceed on an ADA employment discrimination claim either with direct evidence of discrimination or by establishing a *prima facie* case for discrimination under the *McDonell Douglass* burden-shifting framework. *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995) (applying the *McDonnell Douglas* framework to an ADA claim). Generally, to establish a claim for employment discrimination on the basis of disability under Title I of the ADA, much like under Title VII, a plaintiff must establish that (1) the plaintiff has a disability; (2) the plaintiff was a qualified individual for the position; and (3) the employer took an adverse employment action, such as failing to hire the plaintiff, because of the disability. *See Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 572 (4th Cir. 2015).

The MFEPA similarly prohibits employment discrimination on the basis of race, sex, and disability. Md. Code Ann., State Gov't § 20–606(a)(1)(i) (LexisNexis 2021). Because the MFEPA is the state law counterpart to Title VII and courts typically apply Title VII analysis to MFEPA

claims, the Court will address the Title VII and MFEPA claims for race and sex discrimination together under the federal standards. *See Clarke v. DynCorp Int'l LLC*, 962 F. Supp. 2d 781, 788 (D. Md. 2013) (citing *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 743 n.8 (Md. 2007)). Likewise, consistent with prevailing legal authority, the Court will jointly evaluate Lewis's claims for disability discrimination under standards applicable to claims under Title I of the ADA. *See Peninsula Reg'l Med. Ctr. v. Adkins*, 137 A.3d 211, 220 (2016) (applying the ADA standard in evaluating a disability discrimination claim under the MFEPA); *Taylor v. Giant of Md.*, LLC, 33 A.3d 445, 459 (Md. 2011) (stating that Maryland courts have a "history of consulting federal precedent in the equal employment area" when evaluating employment discrimination claims).

Here, Lewis has alleged the first two prongs of a *prima facie* case for race and sex discrimination and the first prong of a case for disability discrimination by asserting that she is an African American woman with a disability who applied to at least five different positions with Defendants. She has also alleged that she was qualified for the positions due to her years of experience in administration and procurement and has attached her resume and academic transcripts, which demonstrate a long history of employment and multiple advanced degrees and certifications. However, even assuming that Lewis has plausibly alleged that she was qualified for the positions to which she applied, she has failed to allege facts sufficient facts to satisfy the fourth prong of a claim for race and sex discrimination, that there are "circumstances giving rise to an inference of unlawful discrimination," *Brown*, 159 F.3d at 902, or the third prong of a claim for disability discrimination, that Defendants failed to hire the her "because of her disability," *Jacobs*, 780 F.3d at 572. For each position, Lewis has not even alleged facts showing that the individuals selected for the positions were from outside the relevant protected class, such as that they were not African American, female, or a person with a disability, and she has provided no facts that would

plausibly demonstrate that they were less qualified for the positions than Lewis. *See McCleary-Evans*, 780 F.3d at 586, 588. She has also failed to allege facts showing that anyone from any of the relevant state agencies made any statements that arguably demonstrated discriminatory animus based on race, sex, or disability.

Rather, Lewis relies almost entirely on her allegations that she was repeatedly rejected for positions for which she "met or exceeded the minimum qualifications." Am. Compl. ¶ 12. Even if true, this allegation does not support a reasonable inference of discrimination. Although Lewis generally alleges that Defendants "treated [her] less favorably than similarly situated applicants outside of her protected racial class," *id.* ¶ 26, she has provided no facts supporting the conclusion that applicants with similar qualifications, but who were not Black, female, or a person with a disability, were deemed more qualified that Lewis. *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010) (affirming the dismissal of a Title VII discrimination claim where the plaintiff had not provided facts showing that a similarly situated person outside the protected class was treated differently); *Bing*, 959 F.3d at 617 (affirming the dismissal of a Title VII claim based in part on the plaintiff's failure to allege facts showing that non-Black employees were treated more favorably). Finally, although Lewis also points to her allegation that she received contradictory qualification ratings for materially similar Procurement Office II positions, any such discrepancy does not support a reasonable inference of discrimination, particularly where the email records attached to the original Complaint show that, after Lewis brought the issue to Defendants' attention, they acknowledged that one of the ratings was erroneous and changed Lewis's rating to reflect that she met the minimum qualifications for the Procurement Officer II position.

These same facts demonstrate that even recognizing that a plaintiff need not establish a *prima facie* case of discrimination to preclude the granting of a motion to dismiss, Lewis's

discrimination claims fail because the Amended Complaint does not provide factual allegations that "allow a court to draw the reasonable inference" of discrimination. *McCleary-Evans*, 780 F.3d at 585. In *McCleary-Evans*, the Fourth Circuit upheld the dismissal of a complaint where the plaintiff, as here, had alleged race and sex discrimination when the SHA failed to hire her for two positions for which she was qualified based on the claim that the decisionmakers were biased and had "predetermined" that they would hire White candidates for the positions. *McCleary-Evans*, 780 F.3d at 583. The court held that these "'naked' allegations" were "too conclusory" to preclude dismissal because they were supported only by the facts that the two decisionmakers who interviewed the plaintiff were not Black, the two applicants hired were not Black, and there was an unspecified history of discriminatory hiring at the relevant division, such that the plaintiff could "only speculate that the persons hired were not better qualified, or did not perform better during their interviews, or were not better suited based on experience and personality for the positions." *Id.* at 585–86. Here, Lewis has made a broad allegation of discrimination based on even fewer facts, as she cannot even assert that either the decisionmakers or the successful applicants were from outside the relevant protected classes, and she offers no facts that would support a reasonable inference of discrimination. The Court therefore finds that Lewis has failed to state a plausible claim of race, sex, or disability discrimination.

## IV. Retaliation

Defendants also seek dismissal of Count 4, which alleges retaliation in violation of the ADA, Title VII, and the MFEPA. To state a retaliation claim under all three of these statutes, a plaintiff must allege facts supporting the conclusion that (1) the plaintiff engaged in a protected activity; (2) the employer took a materially adverse action against the plaintiff; and (3) "the protected activity was causally connected to the employer's adverse action." *Okoli v. City of*

*Baltimore*, 648 F.3d 216, 223 (4th Cir. 2011) (quoting *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997)); *Rhoads v. FDIC*, 257 F.3d 373, 391–92 (4th Cir. 2001) (setting the retaliation standard under the ADA); *Haas v. Lockheed Martin Corp.*, 914 A.2d 735, 742 & n.8 (Md. 2007) (recognizing that Maryland courts look to federal law in analyzing the MFEPA).

Lewis's claims for retaliation under Title VII, the MFEPA, and the ADA fail on the merits. First, Lewis alleges in the Amended Complaint that she engaged in protected activity by "filing complaints with the EEOC and raising concerns with state officials regarding discriminatory hiring practices." Am. Compl. ¶ 18. There is no serious dispute that Lewis's July 11, 2025 EEOC charge, in which Lewis alleged race and sex discrimination, and her July 13, 2025 complaint to MDOT, in which she alleged race, sex, and disability discrimination, constituted protected activity.

As for a materially adverse action, Lewis asserts that Defendants retaliated against her by "alter[ing] her eligibility determinations and continuing to deny her fair consideration." *Id.* ¶ 19. Lewis's claim that Defendants retaliated against her by altering her eligibility determinations does not amount to a materially adverse action because the changes made after her protected activity were favorable to her. Specifically, on October 24, 2025, the MTA informed Lewis that it was changing the adverse determination about her qualifications to "meet[s] the minimum qualifications" for the position. 10/24/2025 Email at 1. Lewis has cited no example of an agency taking an action after she engaged in protected activity to change its evaluation of her qualifications in a way that was unfavorable to her. Nevertheless, the MTA's decision not to hire Lewis based on the determination that she was unqualified for a Procurement Officer II position, which was communicated to Lewis on July 18, 2025, one week after she filed her EEOC charge, is fairly construed as a materially adverse action.

As for causation, this requirement "can be shown in two ways: 'by showing that the adverse act bears sufficient temporal proximity to the protected activity,' or by showing 'the existence of facts that suggest that the adverse action occurred because of the protected activity,' or a combination of the two." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218–19 (4th Cir. 2022) (quoting *Smith v. CSRA*, 12 F.4th 396, 417 (4th Cir. 2021)).

Despite the temporal proximity of this failure to hire to the protected activity, the Court finds that the Amended Complaint does not support an inference that it was causally connected to the protected activity. First, this action was fully consistent with the multiple determinations made prior to the protected activity that Lewis lacked the qualifications for such a procurement position. In fact, Lewis alleges that she was rejected from a position with the same title, Procurement Officer II, at the same agency, the MTA, on June 16, 2025. Where the materially adverse action was the exact same decision made prior to the protected activity, it cannot fairly be viewed as having been caused by the protected activity.

Second, this conclusion is bolstered by the fact that on October 24, 2025, the MTA acknowledged an error in its initial screening process, concluded that Lewis was actually qualified for that position, and updated her application to show that she met the qualifications for the position. Such an action favorable to Lewis, which reversed the materially adverse action, is the opposite of retaliation and significantly undermines any potential inference of causation. Finally, Lewis has not alleged facts showing that, at the time of the July 18, 2025 determination, the MTA had even been informed of the discrimination complaints made to the EEOC and the state agency that occurred within a week before its July 18, 2025 decision. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the

plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case"); *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124 (4th Cir. 2021) (noting that the Fourth Circuit has "consistently required proof of a decisionmaker's knowledge of protected activity to support a Title VII retaliation claim") *Miller v. Md. Dep't of Nat. Res.*, 813 F. App'x 869, 879 (4th Cir. 2020) (noting that while the required showing of causation in relation to a motion to dismiss may not always require a plaintiff to prove an employer's knowledge, the plaintiff must plead "some facts supporting a 'reasonable inference' of causation"). Notably, Lewis's complaint to a state agency on July 13, 2025 was sent to MDOT, not the MTA, and MDOT did not acknowledge receipt of that complaint until July 25, 2025.

Under these circumstances, where the protected activity was not followed by any new form of adverse action, and the one negative action was later reversed voluntarily, the Court finds that Lewis has failed to state a plausible claim of retaliation.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be GRANTED. A separate Order shall be issued.

Date: October 13, 2026

/s/
THEODORE D. CHUANG
United States District Judge